[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiffs have appealed from an assessment of damages made by the defendant for the taking of a portion of their property in the Town of Windsor as shown on a map entitled: "Town of Windsor Map Showing Land Acquired From Anthony R. Cicero, et al by the State of Connecticut Interstate Route 91 (Limited Access highway) Scale 1" = 40' August 1986 Robert W. Gubala Transportation Chief Engineer Bureau of Highways." A copy of the map was introduced into evidence as Exhibit B. The plaintiffs' property and the portion taken were described in the complaint.
The parties stipulated that the date of the partial take was February 24, 1989. The take consisted of 0.280 of an acre CT Page 8881 in area. Also taken was an easement to slope in an area of 0.003 of an acre, more or less, and temporary easements to remove a canopy and construct lip curbing. The temporary easements covered an area of 0.032 of an acre, more or less. Damages as assessed by the defendant in the sum of $290,000 were deposited by the defendant with the Clerk of the Superior Court on February 24, 1989, and withdrawn by the plaintiffs.
The subject property consists of approximately one acre of land in the Town of Windsor on the northerly side of Bloomfield Avenue (Route 305) and at its intersection with the exit 37 off-ramp from the southbound lane of I-91. Bloomfield Avenue runs east and west and I-91 runs north and south. Both are heavily travelled. The general area contains a mix of residential, commercial and industrial uses, with a restaurant and hotels to the north and an off ice park to the south. There was one other service station in the vicinity which was on the northbound side of I-91, but that site has been acquired by the State for widening the highway. The site is level at street grade and slopes down at the northern and western portions. There is a sharp slope along the eastern boundary and there is a 20 foot sewer easement in this portion of the property. Access to the subject property is from the Bloomfield Avenue frontage. There is a 50 foot right of way along the western boundary over which there is the right of ingress and egress. There is access to the subject property from the right of way, and a roadway runs around the building on the property to the diesel pump island.
The site is improved with a 30 foot by 53 foot metal canopy with fluorescent lighting. There is a system of drains and heaters allowing water to flow off. There is a 30 foot by 58 foot concrete pad under the canopy. There are two 4 foot by 24 foot concrete islands and there are 6 double dispensers. There are four large steel underground storage tanks which were installed in 1963, each equipped with a vapor recovery system. One of the tanks was lined with fiberglass within the last 5 of the site. After the take, there will be 13 feet of frontage on Bloomfield Avenue. Rights of access from Bloomfield Avenue will be effectively denied and access must be had from the 50 foot right of way at the, western boundary of the property. The right to remove the canopy and a right to construct curbing, these rights covering 0.032 of an acre, more or less, were also acquired. These rights were to terminate upon completion of the work, but the canopy would then have been removed. Also acquired was a permanent easement to slope for support of the highway along Bloomfield Avenue within an area of 0.003 of an acre, more or less. Portions of the tanks, concrete pads, pump islands, yard lighting, guard rails, curbing and pavement fall within the area taken. The building was not within the area of CT Page 8882 the take, but its replacement and relocation were made necessary by the take.
John Farrell, Jr., and Gary Strecker, both qualified real estate appraisers, were called as expert witnesses by the plaintiffs, although Strecker had been retained previously by the defendant as an appraiser. It was Farrell's opinion that the highest and best use of the property, both before and after the take, was as a commercial retail gasoline service station with repairing, towing and a convenience store. The existing building could not be used after the take and a new building was constructed with the front facing the only remaining access on the right of way. There was no longer space for storing and maneuvering of vehicles so that the plaintiffs did not maintain their towing and repair business. The new building houses a self-service gasoline station, offices and a convenience store. Farrell used comparable sales to arrive at a fair market value before the take for land and improvements of $830,000. It was his opinion that after the take the building had no value and that after the take the fair market value of the property was $65,000. He opined that damages were $765,000.
Strecker also used the comparable sales method of valuation for the land, but he used the cost approach for the improvements. Strecker and Karl Kaffenberger prepared three reports, all three of which were offered into evidence. A report showing an estimate of fair market value as of October 14, 1987, was introduced into evidence as Exhibit 1. A report as of October 20, 1988, was introduced into evidence as Exhibit I. A report as of March 9, 1989, was introduced into evidence as Exhibit 2. We have considered the latest of the three reports to have replaced the earlier reports. Strecker considered that the highest and best use before the take was as a high volume gasoline and repair service station and that the potential for this use remained after the take, although it was severely limited by the restricted access. He opined that the fair market value of the property before the take was $730,000. It was his opinion that after the take the fair market value was $264,000. He calculated, damages as $466,000. It was Strecker's opinion that, although the future of the building was uncertain, it retained some value. He concluded that the depreciated value of the building was $34,000, and this was included in the value of the property after the take.
The plaintiffs also had retained Thomas J. Ringrose, a real estate appraiser, and his report was introduced into evidence as Exhibit H. Using the cost approach as substantiated by the market approach, Ringrose estimated the value of the property before the take to have been $740,000 and the value after the take to be $256,000. He estimated damages at $484,000. CT Page 8883
John F. DeLucco, a qualified real estate appraiser, testified for the defendant. He also prepared three reports, all three of which were offered into evidence. A report showing his estimate of market value as of October 26, 1987, was introduced into evidence as Exhibit 3. A report as of September 30, 1988, was introduced into evidence as Exhibit 4. A report as of March 9, 1989, was introduced into evidence as Exhibit 5. Again, we have considered the latest of these reports to have replaced the earlier reports. DeLucco used the comparable sales approach and the cost approach and arrived at a value before the take for land and improvements of $520,000. Using the market data approach, he arrived at a value of $200,000 for land and improvements after the take. He calculated damages as $320,000. DeLucco opined that the highest and best use of the property before the take was the continued gas station and service garage use. He considered that an alternative use would be to convert to a convenience store with gas station or a fast food outlet. It was his opinion that after the take, the highest and best use was still for a service garage or convenience store. He testified that a prudent buyer would prefer a service station and convenience store over a service station and garage.
The defendant contends that an environmental stigma affecting value attached to the subject property because a gasoline service station is a notorious source of ground water to operate the repair, towing and storage businesses because of the reduced size and access, nor could the large trailer truck servicing business be continued.
Ultimately the determination of the value of property depends upon the considered judgment of the referees, who consider the opinions expressed by the witnesses and the claims of the parties and then come to their own conclusions. After having seen the property, and having given due consideration to the testimony of all of the witnesses and all of the evidence, and relying upon our own knowledge of the elements establishing value, we find that the value of the plaintiffs' property before the take was $785,000 and that its value after the take was $275,000. We have concluded that the damages sustained by the plaintiffs are $510,000.
Judgment may enter for the plaintiffs in the amount of $510,000, less the $290,000 previously paid, an excess of $220,000, with interest on the excess from the date of taking to the date of payment, together with costs and an allowance of $1,500 towards their appraisal fees.
WILLIAM C. BIELUCH, STATE TRIAL REFEREE GEORGE D. STOUGHTON, STATE TRIAL REFEREE CT Page 8884 JOHN M. ALEXANDER, STATE TRIAL REFEREE